Second case, Wong v. Accretive Health Mr. Greene Is Mr. Hayes here? Oh, he's the appellate. I'm sorry? Who's representing the appellant? Mr. Greene? Mr. Hayes? Mr. Hayes, good morning. I'm James Hayes, the objector to the securities class action settlement. This court should reverse the district court's approval of the credit settlement for two independent reasons. First, a district court cannot properly certify a settlement class before deciding a motion to dismiss. And second, it cannot evaluate the adequacy of a settlement without having an estimate of the damages recoverable in a trial, which the plaintiffs here did not provide. The settling parties agree that the class should be defined to include only those purchasers of a credit stock who were damaged by the alleged fraud. They also agree that the district court would likely dismiss the fraud claims based on a credit's forward-looking statements on its QTTC contract. These statements were made following the report of that contract in November of 2010 through January 2012, when the credit comprised investors on the benefits of that contract during its first year. Had the district court dismissed the fraud claims based on the allegedly misleading forward-looking statements, investors potentially damaged by the fraud would include only those purchasing stock between January 2012, when the credit summarized the benefits of the QTTC contract, and April 27, 2012, when that contract was terminated. Mr. Hayes, you're the one person left. Everyone else has settled this case, right? Well, it's a settlement of a class action. I'm the only objector. I'm the only objector, and otherwise there's been a settlement, $14 million. I know you don't agree with that. The attorneys for the class and the credit. You want to be appointed as the, I guess it's gonna be a class of one, or you want to be the, you're an objector. You chose not to file separately. You didn't opt out. I didn't opt out. I objected to the settlement. But this seems to be something that you do routinely, and we're here. No, I don't do it routinely. You don't? I mean, I've been an investor for 30 or 40 years. Is this the first time this has happened? Pardon? Is this the first time this has happened? No, I've objected in other securities class actions. I haven't objected in all the ones that I was eligible. Had the district court dismissed fraud claims on the allegedly misleading forward-looking statements, investors potentially damaged by the fraud would include only those purchasing stock between January 2012, when a credit summarize the benefits of the QTTC contract, and April 27, 2012, when that contract was terminated. Thus, dismissal of the forward-looking claims would reduce the class period by 14 months, which would improve the recovery for the damaged investors. Securities class action settlements or trials that recover a high percentage of damages are important because these Professional investors inherently know or have opinions on when investors are adequately compensated for their fraud losses. The fact that securities class action settlements have historically recovered less than 3% of estimated damages has the unintended consequence of reducing market prices on a wide range of stocks as investors discount their bids based on the fact that national wealth and economic activity should increase if securities class action litigation substantially recovers investors' fraud losses. In Reynolds versus Beneficial National Bank, this court deemed the district judge in settlement phase of a class action suit a fiduciary of the class. District courts cannot meet their duties by approving securities class action settlements prior to deciding a motion to dismiss. This is the first opportunity a court has to determine which class members are potentially damaged by an alleged fraud, and therefore are the only investors a court owes a fiduciary duty. In this case, the plaintiffs defined a punitive class to include many investors. Wait, hang on a second there. I think you just said that the court, you can't figure out who the unless you figure out the merits of the claims? No. The court owes a fiduciary duty to class members who are damaged by the alleged fraud. How about to anybody who falls within the class definition? Well, I mean that's kind of a circular argument. I mean the theory is that the district court has a fiduciary obligation to everybody who whom the lead plaintiff claims to represent, whatever the ultimate merits of their claims might be or might not be. The district court has an obligation to everybody. When class counsel states what the punitive class is, it's not known whether everybody within the class that they define meets these requirements. Right. So I'm saying that should be one of the first things that's determined, and that can only be determined after a motion to dismiss, because if it's dismissed, there is no class and there are no members. So the first opportunity a court has is to decide the motion to dismiss. In this case, the plaintiffs defined a punitive class to include many investors whose class membership relies on allegedly misleading forward-looking statements. Because the court is likely to dismiss these claims, the certification of the settlement class includes those members, includes these members, violates the duty to class members not relying on misleading forward-looking statements to maintain a security claim. Thus, the court can only meet its fiduciary duty to damaged investors by deciding the motion to dismiss before considering preliminary settlement approval. If the case is eventually dismissed in its entirety, then it would prove to be nothing more than a scheme to benefit a random group of investors and their attorneys. Something is better than nothing can never be a district court's rationale for approving the fairness and adequacy of the securities class action settlement. Reynolds also requires district courts considering the estimate the net expected value of continued litigation as a settlement for less than that value would not be adequate. In this case, the plaintiffs did not provide the district court an estimate of the damages the class could recover in a successful trial, making it impossible to estimate the expected recovery that is required to determine the settlement's adequacy. Mr. Hayes, did you raise this before the district court, the policy argument that you're presenting to us now? The policy argument about the... The argument you just made, was that presented to the district court? Yes, I raised the Reynolds issue in the district court and it's in my letter which is in the appendix of the brief and I quote part of it in part of my objection letter, it's quoted in my brief, in my reply brief. You raised Reynolds in your reply brief, don't you? Right, I also raised it in the objection, in my objection. But not in your primary brief, not in your first brief. Yes, in my primary brief, yes. Reynolds is in your opening brief? Yes. For these two independent reasons, the court should reverse the district court's approval of the credia settlement and providing remand instruction for fiduciary judges, this court should consider instructing district courts to deny preliminary settlement approval to securities class action settlements that recover a low percentage of damages or those that are not negotiated on per share recoveries. If there are no further questions, I reserve the balance of my time. You reserve time? Yes. Okay, thank you. If you have some more questions. All right, Mr. Green. Good morning, may it please the court. Kevin Green for Plaintiffs Appellees, also class counsel. I'd like to begin with where Mr. Hayes began and that's the question of whether the district court had to rule on the motion to approve a settlement. The PSLA, the Reform Act, doesn't require that. There's no law that requires that. Anything close to that, there's no authority for it. This would be the first time that that rule would be announced. Motions to dismiss can be fiercely contested, as the first argument today showed. And I think rather than talking in abstractions, should a court rule on a motion to dismiss in a way that's more productive to talk about what happened in this case. And in particular, in the record, the district court record, oh and by the way, Mr. Hayes did not make this argument alone in his objection. He did not argue that the court, he did not argue that the court need to rule on the motion to dismiss before approving the settlement. That argument's not in the objection in his appendix. He did cite Reynolds. He did cite Reynolds. He did, but he did not make that That's my understanding. Yes. I mean, I understand this is brief, but I'm talking about the argument was not presented. That's correct. It was not presented. But putting that aside, the motion to dismiss in this case was fiercely contested. I think it's a misapprehension to say that the claims and potential merit of them were not aired out. They were. It was a thoroughly briefed, extensive motion to dismiss, an extensive motion to dismiss hearing at which the district court took it under submission and gave no hint of which way it was it was leaning. It could have flipped a coin. And after that point, the parties began discussing settlement and eventually reached a resolution before the jams mediated in the summer of 2013. Mr. Green, in the settlement papers presented to the district court, was there any attempt to put even a range of values on the potential for a litigated result? No, there was not because it wasn't required. Well, okay. And it takes me back to what was just going on and why the settlement here is within the range of reasonableness. The parties begin negotiations as to a settlement. They have discussions with a good mediator, lets the parties go back and forth to get a little closer, and then offers a mediator's proposal that both sides can accept. And that was probably what the plaintiffs were saying, we wish it were more, and the defendants were saying we wish it were less. Now, factually that's what happened here. On the legal side of what's required on a range, I think Reynolds is distinguishable because the class notice that if the parties cannot agree on the damages per claim, that the notice shall specify the issues on which they disagree. And damages in a securities case are particularly complicated and complex. The Dura decision from the US Supreme Court, settled by Mr. Hayes, refers to loss causation as turning on a tangle of factors, and that's correct. And that's why a range was not offered. But on an abuse of discretion... Okay, I guess I'm troubled by that because you've told us that this $14 million settlement was a quote, outstanding result, right? Yes. It's about 20 cents per share gross, right? Correct. About 14 cents per share after fees, right? That's correct. The drops in stock prices were pretty dramatic, far exceeding that, right? I think that's correct, yes. Okay, so how does a district judge reach that conclusion without at least some range of quantification for what might happen if the plaintiffs prevail? I think the court had a record on that in the form of the briefing that was presented on classification, which the plaintiffs identified potential strengths and weaknesses. The defendants have argued the strengths of their If you're talking about the kind of arguments about assessing percentage likelihood of outcomes, I get that. That's what relative strengths and weaknesses would say. But if you don't know what you're going to be multiplying the likelihood by, or can't even estimate that, it's pretty hard to come up with a reasonable number, isn't it? Surely you and your class representative, your team had some numbers in mind when you were negotiating. Certainly we did, but the numbers were not required in the class notice and I think that needs to be read consistently with case law of Reynolds. It's not a securities case. That's why we didn't offer it. And the declaration of my partner Jim Barr's document number 73, beginning of paragraph 30, details the settlement discussions and the process that we went through, which I think outlines why the damages were extremely unpredictable among a host of unpredictable considerations in the case. And a range wasn't required and given how this case settled, I don't think it would have added anything. It sounds like what you're describing is kind of a procedural justification for the reasonableness of the settlement, because it was reached by tough negotiations after a fiercely contested motion to dismiss. You guys know what you're doing in the securities fraud area. Obviously the defense is represented by a very capable counsel as well, and so we ought to trust that result, right? I think the result is within the realm of reasonableness and certainly on an abuse of discretion standard. And Mr. Hayes is an absent class member. He has the right to object. He has the right to appeal. So does the settlement reflect what, 5% of the potential recovery, 10%, 50, 1? I don't think that is a matter of record. I don't think the record... Why shouldn't it be? The record doesn't address that directly, because it's not required under the PSOA. Why shouldn't it be? How can a judge get an idea of what the denominator in that fraction ought to be? I understand... The parties work with those numbers, right? Right. Defendants calculating exposure. You're looking how good is our upside. Right. Right. I understand. Those numbers, just given the wild uncertainties of the case going forward, would be very hard to hazard, and that's what's detailed in my partner's declaration. We had loss causation arguments, we had arguments... We have that in our appendix? I don't believe it's in the appendix. Mr. Hayes didn't include it. I'm referring to it. It's in the district court record that was forwarded from the district court. It's document number 73, and that's beginning at paragraph 30. In the class itself, were there, I was confused with this, were there people included in the class that sold early, we'll call it, or bought late? Sold before the crash and bought afterwards. Are those, I for some reason thought they were all part of the class because they were shareholders. Is it only the losers? The class is defined as to those who purchased within a certain time frame. Is that what it is? So it's only the losers that are in this? It's only those who purchased during the time of price inflation. During the time of what? Price inflation, from the class period, November 2010 to April of 2012. I'm running into my... To defense counsel's time, unless the court has any further questions. Thank you, Mr. Green. Mr. Feller? Mr. Chambleton, I'd like to start with your question, if we can, which is whether the district court is required to do a mathematical calculation of damages before approving a settlement. I think... Or at least to have received information about that. So the district court received substantial information about that. Let me start as a general proposition on that issue, and this assumes these numbers are correct, but these are the appellant's numbers. So if you go to appellant's opening brief, note page 17, note 3. So appellant's opening brief, page 17, note 3, appellant says the average class recovery in a security suit during the period of 1995 to 2014 is 1.96%. If you take his math for what the recovery in this case is, at 20 cents a share, he says the recovery here is 2.6%, right? So we've got an average of 1.96%. We are substantially above that in this case. I believe Mr. Hayes, though, would argue that the entire data set includes settlements that shouldn't have been approved in the first place. No, that's his numbers. So he calculates damages. He says on April 24th, 2012, there was a price drop of seven or eight dollars when the news came out, and the way he would calculate damages is to take that seven or eight dollars times the share at that time, and the settlement here, the 14 million, is 2.6%. So that's as he would have it. We've got a 2.6% recovery, which is substantially in excess of the average. But let me go to the information that the district court did have in front of it, because I think this is key. So the district court, I think, had three fairly critical pieces of information. One is this settlement was not, the 14 million dollars was not a number defendants proposed. It's not a number that the plaintiffs came up with. The 14 million dollars came from a third-party neutral mediator's proposal. That's where that number came from, and the parties didn't even agree to it right away. There was some back and forth after that. And so having no conflict whatsoever, the mediator is the one that came up with that number. The district judge knew that fact, and there is substantial authority in the Second Circuit, a case called D'Amato v. Deutsche Bank, that's 236 F3rd 78. In the Ninth Circuit this year, a case called Laguna v. Coverall, 753 F3rd 918. And in the Eleventh Circuit, Nelson v. Meade Johnson, that's 484 Federal Appendix 429. The Seventh Circuit hasn't ruled yet, but there's also a district court opinion out of Wisconsin, a case called Great Neck Capital Appreciation, that's 212 Federal Reporter 400. All of those cases stand for the proposition, quote, a strong presumption of fairness attaches to a settlement agreement when it is the result of this type of negotiation with an experienced mediator. So what was the citation for the Wisconsin case? I'm sorry, it's 212 FRD 400. It's Great Neck Capital Appreciation versus PwC. So that's one. This came out of a mediator's proposal. Two is, there was a limited wasting insurance fund here. And in one of the cases where, Your Honor rightly pointed out, that Mr. Hayes has objected previously, the Harmony Gold case out of the Second Circuit, I'm sure the court made the point, the defendant wouldn't have agreed to that, so it doesn't really matter. Here, I can tell Your Honors, Accretive Health and the individual defendants would have not agreed to a settlement above insurance limits. And wasting means that litigation costs are being assessed. Exactly, exactly. And so the $14 million here, when you take plus attorney's fees, plus other was about as high as you could go on insurance loans. Third, Your Honor, it is, you know, clients... I'm sorry, and was that information provided to the district court? It was, Your Honor. It's, in the lower court, it's docket number 71. It's plaintiff's memorandum seeking approval at page 4. Thank you. And then, you know, clients will ask all the time, you go in, you're arguing a motion to dismiss, and they say, well, gee, what's our likelihood of prevailing on this motion? Here, we had parallel litigation going on. We had a case called Morris Trust, raising the exact same factual allegations as this case won. This was a shareholder class action, that was a derivative suit. That case, Morris Trust, and the site is, it was a case in front of Judge Finerman here in the Northern District, 2013 Westlaw 534-8357. That case was dismissed on a motion to dismiss, exact same factual allegation. It was a derivative suit, so the pleading standards are a little different. Judge Finerman granted a motion to dismiss that case. It was without prejudice, there was an amended complaint. Before the settlement? Before the settlement and before final approval, yes. The settlement had been reached, it was before the settlement was entered on preliminary approval. The Morris Trust was dismissed on September, in September of 2013, September 24th. The settlement, I believe, final approval was April 2010. So, all three of those things are pieces of information the district court had. Mr. Feller, would you submit, within a week, all those citations that you submitted? Of course, very happy to do that. Thank you. All right, Mr. Hayes. Your Honor, in my, in the last paragraph of my objection, states, the competing claims divide the class with forward-looking statements about the transformative potential of the QTTC contracts, ending as the omissions claims begin. If, for example, the court dismisses the forward-looking claims, a key date for the omissions claims is the creedee's knowledge of the seriousness of the non-conformance issues on March 25th, 2011. If Minnesota's Attorney General report identifies serious and continuing violations of its agreement with Fairview that were communicated to a creedee prior to March 2011, which is a creedee's secondary offering on that date, this would then be the beginning date of the class period, absent any forward-looking claims. Under the securities laws, this was brought as a 10b-5 claim. Under the theory that there was a scheme and that this contract that's in contention was hyped and basically increased the price of a creedee-filled stock. If those claims are dismissed, the class now begins at the beginning day of that contract. If those would begin at a much later date, and so you'd have a much smaller class period that would include only the claims of admission. The district court judge has in Reynolds been deemed a fiduciary, and the fiduciary is not to the class that's defined by plaintiff's attorneys, but it's to the class that is actually damaged by that legislature. So if the forward-looking claims are dismissed, there are no damages because there is no class for that period, and the only ones remaining are the ones that begin at a much later date. If those claims are dismissed, then nobody is damaged, and there shouldn't be a settlement paying out, and that affects the workings of the market. I mean, this is just drains, if it's a frivolous case, it just drains money out of the system, which has ended up being paid by shareholders through companies paying for insurance, which reduces the cash flow of companies, which reduces the prices that shareholders pay, and so the fiduciary obligation to determine, you know, if there are valid claims, security is strong, if so, who is damaged, and then proceed from there with a settlement if you have a class that's remaining. Mr. Hayes, in page 37 of your brief, you suggest we should remand, in essence, to insist on a higher settlement that the defendants say they will not pay, but that if we did so, in essence, everybody would be better off and accretive would have a higher stock price. Top paragraph on page 37. On 37? Yes. The foregoing hypothetical example? Yes. Okay. Now your question is? It sounds like, if I may be blunt, magical thinking, that higher settlement amount. The district court is faced with transaction costs, limited insurance coverage, etc., and has to make a decision. Insurance shouldn't be an issue. It is. I mean, this is a solvent company that doesn't rely on insurance to pay these damages, and the damages, and it's a small company, and the damages, in any case, are not going to exceed the company's ability to pay for them, irrespective of insurance. I mean, their financial statements show they have a hundred million dollars in cash on their balance sheet. Accretive stock price, following the drop, continue to drop, and today it's less. Thank you. Okay, thank you, Mr. Hayes, Mr. Green, Mr. Feller. Thanks to all counsel. Case taken under advisement.